EX. J

# In The Matter Of:
*Cheri Marie Hanson vs.*
*Daniel Best, et al.*

*30(b)(6) of the City of Mankato through Officer Jeremy Clifton*
*June 22, 2016*



depo international
worldwide deposition services

*Min-U-Script® with Word Index*

Page 101

It's not admissible or relevant.
**BY MR. MILLER:**
Q. Do you see where it says, "Only the RIPP Hobble restraint device approved by the Department shall be used"?
   MS. SKOGLUND: Capital R-I-P-P.
   THE WITNESS: I do see that, yes.
**BY MR. MILLER:**
Q. Okay. Was that the hobble restraint that was being utilized on 1/1/2013?
A. I do not know.
Q. If you look at 306.5.
   Do you see 306.5?
A. I do.
Q. It says, "Only those officers trained in the use of the restraint are authorized to employ it on any person."
   Do you see that?
A. I do see that.
Q. And, so, that became a written policy on 2/20/2013. Is that right?
A. The date of its enactment and thereabouts would have been when it was enacted as an individual policy, labeled "306."
Q. Was that also what officers were being

Page 102

trained on prior to that date, is that you should only use it if you know how to use it or if you've been trained on it?
A. On the date of this event, on 1/1 of '13, the officers who employed its use would have been -- employed its -- would have employed its use through supervisor guidance and demonstration and acknowledgment that they understood its use of how to employ a hobble strap.
Q. And, so, the --
A. No specific language of this nature, as it says on the first page, existed until 2/20 of '13.
Q. Okay. Let's look at the next page.
A. (Witness complies.)
Q. Section (d).
A. "D," as in David?
Q. Yeah. It says on the top of the page, "Once secured, the person should be placed in a seated or upright position and shall not be placed on his/her stomach for an extended period as this may potentially reduce the person's ability to breathe."
   Do you see that section?
A. I do see that.
Q. And is that the policy?
A. That's the --

Page 103

   MS. SKOGLUND: Sorry to have to keep continuing to object, but.
   THE WITNESS: That's the language of the policy stated in the leg restraint policy.
**BY MR. MILLER:**
Q. Was that how officers were being trained through the training that they were receiving on the hobble prior to this time?
A. I think, as I stated before, officers were being trained to mitigate the situation as it arises in order to best control and defend and -- within that situation.
Q. And were they trained that part of the situation is that having someone on their stomach may potentially reduce the person's ability to breathe?
   MS. SKOGLUND: Foundation. And it's calling for an expert opinion.
   But go ahead.
**BY MR. MILLER:**
Q. I'm just asking. This is the policy right now, right; that being placed on his or her stomach for an extended period of time as this may potentially reduce the person's ability to breathe? That's how you would instruct an officer as we sit here today. Is that right?

Page 104

A. Under "D," as in David, it speaks to the word "should," which speaks to each circumstance is different; and that within the situation that we are speaking about today, that each circumstance will be different and the officers there need to best mitigate that situation.
Q. And is part of the circumstances that they should be understanding is that being on your stomach in the prone position, you know, being in the prone position, with the hobble strap applied, could impede someone's ability to breathe?
A. The officers should be observing the subject that they have within their purview, that they've been dealing with, to ensure that they are medically sound, and they're looking at all observations to include a variety of things about subject care.
Q. And prior to the enactment of this policy, were they being trained that having someone on their stomach in a restrained position could potentially reduce their ability to breathe?
   MS. SKOGLUND: Asked and answered.
   MR. MILLER: He didn't answer it, though.
**BY MR. MILLER:**