## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Cheri Marie Hanson, as trustee for the next of kin of Andrew Derek Layton,

**Case No.:  15-CV-04578 (MJD/SER)**

Plaintiff,

vs.

Daniel Best, Audrey Burgess, Craig Frericks, Kyley Groby, Matthew Huettl and Kenneth Baker, individually and acting in their official capacities as City of Mankato Department of Public Safety Police Officers; Gold Cross Ambulance, Michael Jason Burt, and Thomas John Drews,

**DEFENDANT OFFICERS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR SUMMARY JUDGMENT MOTION**

Defendants.

## INTRODUCTION

Plaintiff does not dispute the record set forth by the officers. Despite Plaintiff's mischaracterization of Layton's behavior as "subdued and controlled," she presents no evidence to support her characterization. Further, Plaintiff's conclusory statements the officers failed to provide medical care is unsupported as paramedics were called to the scene. Plaintiff's unfounded claims ignore numerous undisputed facts, including:

- Even after leg restraints were applied, Layton actively fought against the restraints, kicking at officers and pulling his arms away from his body. (Ex. 3, p. 57-58; Ex. 2, p. 125; Ex. 22, p. 149; Ex. 23, p. 47-48; Ex. 9, p. 77);

- Officers attempted to maintain Layton's position on his stomach because he remained a threat and officers were concerned, if placed on his side, he would hurt himself by striking his head on adjacent wall/carts. (Ex. 3, 46; Ex. 4, p. 93; Ex. 13, p. 33; Ex. 2, p. 84);

- After restraints were used, no officer pressed down on Layton's head or neck. (Ex. 1, p. 43-44; Ex. 3, p. 83-84);

- Layton's behavior was consistent with methamphetamine use[1] and his same behavior demonstrated during prior police contacts; (Ex. 2, p. 99-101; Ex. 1, p. 83-84); and

- Officers monitored Layton's condition, while awaiting paramedics' arrival, and reasonably relied upon the paramedics' assessment Layton did not require immediate medical treatment. (Ex. 2, p. 184; Ex. 22, p. 128-149).

Plaintiff also misleads this Court in order to bolster her unsubstantiated claims. (*See, e.g.,* Plaintiff's Memo., p. 20 (claiming Burt testified Layton was brain-dead upon arrival at jail) *with* Ex. X, p. 77 (no reference to brain-dead) and Plaintiff's Memo., p. 34 *with* Ex. 33, p. 127-132). There is no evidence to support Plaintiff's contentions. *See Barber v. Cl Truck Driver Training, LLC,* 656 F.3d 782, 791 (8th Cir. 2011). The unrefuted record establishes that the officers are entitled to qualified immunity.

---

[1] In her brief, Plaintiff claims Layton was experiencing excited delirium. Plaintiff's experts opined he was not. (Ex. A, p. 4-5; Ex. D, p. 12). Further, paramedics ruled out excited delirium. (Ex. 22, p. 152).

## ARGUMENT

## I.    THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY.

Plaintiff admits the officers had, at minimum, arguable probable cause to arrest Layton for assault of an officer and does not dispute the use of force, up to and including, restraining Layton's legs was reasonable.  (Plaintiff's Memo., p. 23-24).  This concession does not permit the Court to divorce Layton's conduct, after restrained, from the totality of the circumstances—his violent, ceaseless resistance to arrest, and his ongoing, fight against the restraints, prevented officers from placing him in the recovery position. *Nelson v. County of Wright*, 162. F.3d 986 (8th Cir. 1998).  When considering the totality of the circumstances, the officers reasonably believed Layton continued to present a threat to himself or others and could not be safely positioned on his side, back, or seated upright.

In an effort to avoid the conclusion the officers' use of force was reasonable, Plaintiff mischaracterizes Layton's conduct as "subdued and controlled…posing no threat to defendant officers or anyone else."  (Plaintiff's Memo., p. 25).  There is simply no support for this contention.  Rather, the unrefuted evidence shows Layton continued to actively resist arrest, fighting against the restraints, and preventing the officers from safely repositioning him.  *See supra* page 1-2; ECF 68, p. 9-12.

Plaintiff ignores the qualified immunity standard this Court must apply.  In 2017, the U.S. Supreme Court mandated, when a plaintiff fails to identify a case where an officer, acting under similar circumstances, was held to violate the Fourth Amendment, qualified immunity applies and bars plaintiff's claims.  *White v. Pauly*, 137 S.Ct. 548,

552 (2017).  Following *White* the Eighth Circuit unequivocally stated, a plaintiff "must show a robust consensus of cases" to demonstrate whether the particular conduct at issue violated clearly established law.  *De La Rosa v. White*, 852 F.3d 740, 747 (8th Cir. 2017). Where "there is no consensus to be found in the prior decisions" the Court must not substitute its hind-sight analysis for officers' on-the-scene assessment.  *Id.*; *White*, 137 S.Ct. at 552.

Plaintiff points to no case-law that could have given the officers' clear notice the use of leg restraints, even with occasional downward pressure, and failing to move a resistant arrestee into a recovery position violated clearly established law.   The law cited by Plaintiff belies her assertion the officers were on notice that they could not restrain a resistant subject in a prone position after applying leg restraints.   The cases cited by Plaintiff involve continuing to use force with an unconscious subject, *McCue v. City of Bangor*, 838 F.3d 55, 59 (1st Cir. 2016); *Estate of Bryant v. Buchanan*, 883 F.Supp. 1222, 1227 (S.D.Ind. 1995); *Alexander v. Beale Street Blues Co.*, 108 F.Supp.2d 934 (W.D.Tenn. 1999); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004), or when a suspect is "calm" and no longer resisting, *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008); *Cruz v. City of Laramie*, 239 F.3d 1183 (10th Cir. 2001); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1061 (9th Cir. 2003); *Swans v. City of Lansing*, 65 F.Supp.2d 625 (W.D. Mich. 1998).  Plaintiff also relies upon cases where the officers left a suspect restrained, in a prone position, without monitoring and later found the suspect unresponsive.  *See Gutierrez v. City of San Antonio*, 139 F.3d 441 (5th Cir. 1998); *Guseman v. Martinez*, 1 F.Supp.2d 1249 (D.Kan. 1998).

Because *McCue* was decided three years <u>after</u> the incident, it provided no notice to the officers.  *Wilson v. Layne*, 526 U.S. 603, 617 (1999)(to show law was clearly established, plaintiff must rely upon law available "at the time of the incident").  None of the cases Plaintiff cites addressed the scenario presented to the officers on January 1, 2013 as it is undisputed (1) Layton continued to fight against the restraints; and (2) he was continually monitored by officers and, later, paramedics.

Courts have consistently found, when a suspect continues to resist arrest and fights against restraints, prone restraint, including use of downward pressure, is not constitutionally excessive.  *See, e.g., Ryan v. Armstrong,* 850 F.3d 419, 427-28 (8th Cir. 2017)(restraining resistant inmate with bodyweight and shackles reasonable); *Bussey-Morice v. Kennedy*, 657 Fed.Appx. 909 (11th Cir. 2016)( knee pressing down on suspect's head during four-point restraint reasonable to overcome resistance); *Gunter v. Township of Lumberton*, 535 Fed.Appx. 144 (3d Cir. 2013)(holding down hog-tied suspect, who was kicking at officers after restraints applied, was reasonable); *Pratt v. Harris County*, 822 F.3d 174, 184 (5th Cir. 2016)("recurring violence," even after hog-tied, supported use of restraint and positioning suspect on stomach);  *Giannetti v. City of Stillwater*, 216 Fed.Appx. 756, 765-66 (10th Cir. 2007); *Bornstad v. Honey Brook Twp.*, 211 Fed.Appx. 118, 123-25 (3d Cir. 2007); *Wagner v. Bay City*, 227 F.3d 316 (5th Cir. 2000).  Plaintiff cannot establish, as a matter of law, that no reasonable officer would have believed keeping Layton on his stomach after applying leg restraints, in conjunction

with intermittent pressure, violated Layton's constitutional rights.[2]   This is the classic case where officers used discretion to respond to resistance, which warrants qualified immunity.

Plaintiff argues *Ryan v. Armstrong* and *Smith v. City of Minneapolis* are not controlling because the officers in *Ryan* and *Smith* placed the subjects in a recovery position.   However, in both cases, the resistant subject was not moved from a prone position until it was clear he was not breathing.  *Ryan*, 154 F.Supp.3d at 806; *Smith*, 2012 WL 12848434 at *3.   Thus, the officers in *Ryan* and *Smith* did exactly what the Mankato officers did here—moved a resistant subject into a position where CPR could be performed when it became apparent the subject was no longer breathing.   As such, neither *Ryan*, nor *Smith* establish it is a constitutional violation to control a physically resistant arrestee on his stomach.

Plaintiff encourages this Court to consider whether Layton's movements were an attempt to breathe.   However, Layton's intentions are irrelevant to this Court's analysis. *Boude v. City of Raymore, Missouri*, 2017 WL 1749664, *2 (8th Cir. 2017).   Qualified immunity does not require the officer know what is in the heart or mind of a criminal suspect, it requires that the officer act reasonably to a threat.  *Id.*; *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012).

Plaintiff cites to a Mankato DPS policy that went into effect <u>after</u> the incident, to argue that the officers' training put them on notice they were required to move Layton off of

---

[2] Because no constitutional violation occurred, there is no basis for Plaintiff's failure to intervene claim.

his stomach.  (Plaintiff's Memo., p. 6-7, 34).  This argument fails because, even a "breach of [a departmental policy] is not dispositive to a determination of whether [officers] violated a clearly established constitutional right."  *Mettler v. Whitledge*, 165 F.3d 1197, 1203 (8th Cir. 1999); *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988).  Moreover, it is illogical a policy, not implemented at the time, could have provided the officers with notice.

## II.    PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM FAILS.

Plaintiff claims the officers were deliberately indifferent to Layton's medical needs because they did not promptly bring Layton to the hospital.  However, Plaintiff cites to no case-law stating the officers could not rely upon the paramedics' medical judgment regarding (1) whether Layton required medical treatment and (2) the appropriate positioning of Layton during transport.[3]  Further, case-law establishes it is reasonable for officers to rely upon paramedics' medical judgment.  *See Carpenter,* 686 F.3d at 351; *Christian v. Wagner,* 623 F.3d 608, 614 (8th Cir. 2010).  Accordingly, Plaintiff's deliberate indifference claim fails.

## III.   PLAINTIFF ABANDONED HER STATE-LAW CLAIMS.

Under Minnesota law, wrongful death is a separate and distinct cause of action. Minn. Stat. §573.02; *Smith v. City of Minneapolis*, 754 F.3d 541, 549 (8th Cir.

---

[3] Plaintiff's deliberate indifference claim is based on Dr. Michael Baden's opinion Layton's hyoid bone was fractured.  Even if a fracture existed, there is no evidence it occurred during the officers' use of force.  Ex. 34, p. 4.  Thus, Dr. Baden's opinion cannot create a fact issue to preclude summary judgment.  *See Burdine v. Sandusky County*, 524 Fed.Appx. 164, 168-169 (6th Cir. 2013)(finding Dr. Baden's opinion in a positional asphyxia case, based on the alleged fracture of plaintiff's thyroid cartilage, "failed to raise a genuine issue of material fact because…the only evidence supporting his theory is Dr. Baden's own opinion."); *Eckelkamp v. Beste*, 315 F.3d 863, 868 (8th Cir. 2002).

2014)(addressing §1983 and wrongful death claims separately); *Craighead v. Lee*, 399

F.3d 954, 963 (8th Cir. 2005).  Plaintiff asserted a wrongful death action in Count VII.

(ECF 1, ¶¶153-156).  Plaintiff expressly denied "assert[ing] any independent state law

claims against the defendant officers."  (Plaintiff's Memo., p. 40).  Accordingly, she has

abandoned and waived her wrongful death claim and no state-law claims remain against

the officers.  *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 734-35

(8th Cir. 2009); *Olson v. Fairview Health Serv. of Minn.*, 831 F.3d 1063, 1073 (8th Cir.

2016).

Dated: May 19, 2017                    **JARDINE, LOGAN & O'BRIEN, P.L.L.P.**


                                       By:  *s/Vicki A. Hruby*
                                       _____
                                       Joseph E. Flynn (A.R. #0165712)
                                       Pat J. Skoglund (A.R. #152729)
                                       Vicki A. Hruby (A.R. #0391163)
                                       8519 Eagle Point Boulevard, Suite 100
                                       Lake Elmo, MN 55042-8624
                                       Telephone: (651) 290-6500
                                       Facsimile: (651) 223-5070
                                       E-Mail:   jflynn@jlolaw.com
                                                 pskoglund@jlolaw.com
                                                 vhruby@jlolaw.com

                                       ***Attorneys for Defendants Best, Burgess, Frericks,***
                                       ***Groby, Huettl, and Baker***