# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3821
_____

Cheri Marie Hanson, as trustee for the next of kin of Andrew Derek Layton

*Plaintiff - Appellee*

v.

Daniel Best; Audrey Burgess; Craig Frericks; Kyley Groby; Matthew Huettl; Kenneth Baker, individually and acting in their official capacities as City of Mankato Department of Public Safety Police Officers

*Defendants - Appellants*

Gold Cross Ambulance; Michael Jason Burt; Thomas John Drews

*Defendants*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: November 14, 2018
Filed: February 8, 2019
_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellate Case: 17-3821     Page: 1     Date Filed: 02/08/2019 Entry ID: 4754647

Appellee brought an action under 42 U.S.C. § 1983 against Appellants, police officers with the Mankato Department of Public Safety, in their individual capacities, alleging the officers used excessive force and exhibited deliberate indifference to medical needs in an incident that led to the death of her son. Appellants appeal the district court's denial of their motion for summary judgment based on qualified immunity. We find that the officers' use of force did not violate clearly established law nor did their actions on the scene exhibit deliberate indifference to medical needs. Having jurisdiction under the collateral order doctrine,[1] we reverse.

I.

Early in the morning of January 1, 2013, dispatch summoned Mankato police officer Daniel Best to a Hy-Vee grocery store to check on a man sleeping in the foyer. At 4:45 a.m., Best found Andrew Layton sleeping on the floor in the fetal position with a jacket pulled over his head. Best assumed Layton was intoxicated and attempted to wake him by tapping him with his hand. Layton awoke and responded aggressively. Best forced Layton to the ground using a foot sweep and held him down on his stomach as Layton began making loud groaning and growling noises. Best called for assistance. As Best ordered Layton to put his hands behind his back, Layton continued to yell incoherently, thrash his arms, kick his legs, and twist away. Private

---

[1] Hanson contends that we lack jurisdiction to hear this appeal, arguing Appellants contest primarily factual matters. We disagree. We have jurisdiction to the extent that we may resolve "abstract questions of law related to the qualified-immunity determination—typically, whether the allegedly infringed federal right was clearly established." Thompson v. Murray, 800 F.3d 979, 982-83 (8th Cir. 2015). Therefore, while we may not determine "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial," Johnson v. Jones, 515 U.S. 304, 320 (1995), we may address whether the district court's facts, "as a 'purely legal issue,' involve a clearly established violation of federal law." Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (quoting Johnson, 515 U.S. at 313).

Appellate Case: 17-3821    Page: 2    Date Filed: 02/08/2019 Entry ID: 4754647

citizens at the Hy-Vee helped Best hold Layton down until other Mankato officers arrived at 4:47 a.m.

Seeing Best's struggle, Officer Kenneth Baker used knee strikes on Layton's shoulder and knelt on Layton's back. Officer Matthew Huettl grabbed one of Layton's arms to prevent him from pushing himself up. Baker struck Layton's right arm up to six times with a closed fist. Officer Kyley Groby held down Layton's legs and lower back as the other officers tried to handcuff Layton. Groby held Layton's head down in an unsuccessful attempt to make Layton stop resisting.

Officer Audrey Burgess arrived to see four officers struggling with Layton. She deployed her taser twice in drive-stun mode against Layton's thigh. Finally, officers handcuffed Layton with two sets of cuffs. He continued to kick, injuring Best and Burgess. Officers applied a hobble restraint, connecting leg restraints to Layton's handcuffs, and Layton began rolling side-to-side while restrained in a prone position. When Layton began spitting at the officers, they used a spit mask. Best commented that he believed Layton was "methed out." Commander Craig Frericks, who arrived during the struggle, thought similarly and requested that Layton be transported to the jail by ambulance because using the squad car would require removal of Layton's restraints. Frericks also feared that Layton could asphyxiate.

To prevent Layton from harming himself before the ambulance arrived, Baker and Huettl remained beside him as he continued to intermittently struggle against his restraints and make loud noises. Layton would have brief moments of calm followed by continued resistance that Huettl described as "tensing his muscle[s], yelling and groaning, pushing his body to the point of exhaustion, rocking his head back and forth, and violently flexing and shaking." Officers determined that keeping Layton in a prone position was best given his continued resistance, and Baker pressed Layton's shoulders to the ground while Groby held Layton's thighs.

-3-

Paramedics Michael Burt and Thomas Drews arrived with an ambulance at 5:05 a.m. Having recognized Layton's name after checking his identification, Baker told the paramedics that Layton was known to abuse methamphetamine and alcohol; other officers stated Layton's reaction was consistent with his behavior in prior police interactions. Burt and Drews assessed Layton's breathing, airway circulation, and heart rate. Concluding that Layton did not require emergency medical treatment, Burt and Drews determined he could be safely transported to jail. Baker, Huettl, Groby, and Frericks lifted Layton onto a cot and unhooked his leg restraints from his handcuffs. Burt and Drews attempted to place Layton on his side, but because he rolled back to his stomach, they placed a pillow under his shoulder and turned his head to prevent him from lying flat. Baker knelt on Layton's shoulder to apply a wrist restraint then let the paramedics position the other straps over Layton.

Best and Baker rode in the ambulance with Layton, who continued to struggle on the cot. To prevent Layton from falling off, Baker held Layton's shoulder to the cot while Burt monitored Layton's pulse and breathing. Layton did not stop moving until he entered the jail's sally port. When they moved Layton into the booking area of the jail, officers discovered Layton was in cardiac arrest. They removed his restraints, initiated CPR, and applied a defibrillator. While they restored a cardiac rhythm and brought Layton to a hospital, Layton never regained consciousness. He died on January 5, 2013. His autopsy determined Layton suffered from pneumonia due to probable excited delirium, atherosclerotic heart disease, and liver disease. His body had multiple abrasions and contusions; there was bleeding between his skull and scalp and in his neck. He tested positive for amphetamine and alcohol.

Appellee Cheri Marie Hanson, Layton's mother,[2] sued Best, Burgess, Fréricks, Groby, Huettl, and Baker in their individual capacities under 42 U.S.C. § 1983 for using excessive force after restraining Layton in violation of the Fourth Amendment and for exhibiting deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment. The officers sought summary judgment, invoking qualified immunity. The district court denied the motion as to both claims.

II.

"We review a district court's qualified immunity determination on summary judgment *de novo*, viewing the record in the light most favorable to [the nonmoving party] and drawing all reasonable inferences in her favor." Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009).

"Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Mitchell v. Shearrer, 729 F.3d 1070, 1074 (8th Cir. 2013). The court may exercise its discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

With respect to her excessive force claim, Hanson alleges the officers violated the Fourth Amendment by keeping Layton restrained in a prone position for an excessive length of time, causing his death. We first examine the clearly-established prong because it is dispositive. See Smith v. City of Minneapolis, 754 F.3d 541, 546

---

[2]According to her complaint, Hanson "was duly appointed trustee by Order of the District Court of Nicollet County, State of Minnesota, to prosecute a civil action for the benefit of the next of kin of her son, pursuant to the provisions of the Minnesota Wrongful Death Statute, Minn. Stat. § 573.02(3)." Dist. Ct. Dkt. 1.

Appellate Case: 17-3821     Page: 5     Date Filed: 02/08/2019 Entry ID: 4754647

(8th Cir. 2014). "To be clearly established, a legal principle . . . must be 'settled law' . . . [that is] clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." District of Columbia v. Wesby, 138 S. Ct. 577, 589-90 (2018) (citations and internal quotation marks omitted). Because the plaintiff has the burden of demonstrating that the law confirming her constitutional right was clearly established, Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007), Hanson must identify "controlling authority" from the Supreme Court or our prior case law or "a 'robust consensus of cases of persuasive authority'" that places the constitutional question "beyond debate." De La Rosa v. White, 852 F.3d 740, 746 (8th Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)), cert. denied, 138 S. Ct. 737 (2018). In this case, she can do neither. This court has not deemed prone restraint unconstitutional in and of itself the few times we have addressed the issue. See Ryan v. Armstrong, 850 F.3d 419, 427-28 (8th Cir. 2017) (affirming qualified immunity where officers held arrestee down in prone position and tased him); Mayard v. Hopwood, 105 F.3d 1226, 1228 (8th Cir. 1997) (affirming the reasonableness of force used in placing a resisting, hobbled suspect in a prone position to transport her to the jail). In Henderson v. Munn, we denied qualified immunity when, in addition to using prone restraint, a police officer pepper-sprayed an injured suspect. 439 F.3d 497, 502-03 (8th Cir. 2006). Under these cases, there is no clearly established right against the use of prone restraints for a suspect that has been resisting. The decisions of our sister circuits are similarly factually distinct. Mindful of the Supreme Court's repeated admonition against defining clearly established law "at a high level of generality," White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting al-Kidd, 563 U.S. at 742), we find that the fact-intensive qualified immunity analyses in comparable appellate cases have yet to produce a sufficiently particularized "robust consensus," De La Rosa, 852 F.3d at 746, about prolonged prone restraint. See Wesby, 138 S. Ct. at 590 (noting that the clearly established standard requires a right to be defined with "a high degree of specificity"). Therefore, the right at issue is not clearly established, and the officers are entitled to qualified immunity on Hanson's excessive force claim.

III.

As to Hanson's second claim alleging denial of Layton's right to medical treatment, we first examine whether a constitutional violation occurred. Although her claim arises under the Fourteenth Amendment, we analyze such allegations under the Eighth Amendment deliberate indifference standard. See Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012). This standard has both an objective and subjective prong: Layton must have "demonstrate[d] that he suffered an objectively serious medical need" while, subjectively, the officers must have "had actual knowledge of those needs but deliberately disregarded them." Id. "Where the medical professionals [at the scene] . . . never even suggest[] that treatment was warranted, there is insufficient evidence that a need for medical treatment was so obvious that [law enforcement] exhibited deliberate indifference by taking [a suspect] to jail." Id. at 651.

Hanson alleges that Layton was clearly suffering from excited delirium syndrome such that transporting him directly to jail was inappropriate. However, this allegation is undercut by the paramedics' presence at the scene, and the undisputed fact that the paramedics performed a medical assessment of Layton. Because medical professionals never suggested Layton had emergency medical needs, the urgent nature of Layton's condition could not have been "obvious" to a layperson. Id. at 651. Furthermore, because the officers called paramedics in the hopes of safely transporting Layton and then stayed beside Layton as he was transported, they did not "deliberately disregard[]" his medical needs. Id. Because neither prong of the deliberate indifference standard is met, the officers did not violate Layton's constitutional right to medical care and therefore are entitled to qualified immunity.

IV.

We reverse the denial of qualified immunity to the officers and remand for further proceedings consistent with this opinion.

_____

Appellate Case: 17-3821     Page: 8     Date Filed: 02/08/2019 Entry ID: 4754647